UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
GELICITY UK LIMITED,

        Plaintiff,

  - against -

JELL-E-BATH, INC., et al.,

      Defendants, Third Party Plaintiffs, and Counter-Claimants,

  - against -

MORRIS, et al.

      Third Party Defendants and Counter-Defendant.
----------------------------------------------------------x

MEMORANDUM AND ORDER

10 Civ. 5677 (ILG) (RLM)

GLASSER, Senior United States District Judge:

    Plaintiff Gelicity UK Limited ("Gelicity") brings this action against Jell-E-Bath, Inc. ("Jell-E-Bath") and Elizabeth De Alicante (collectively "defendants" or "counterclaimants") for a declaratory judgment of trademark non-infringement. Defendants bring claims against Wayne Walton and Paul Morris (collectively "third party defendants") and counterclaims against Gelicity (collectively "Gelicity defendants") for federal trademark infringement and under state law.

    Currently before the Court is Gelicity defendants' motion to dismiss the counterclaims and third party claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is converted to one brought pursuant to Rule 12(c) and is hereby GRANTED with leave for counterclaimants to amend their pleadings.

## BACKGROUND

1

The following facts are taken from counterclaimants' pleadings and public documents; they are accepted as true for purposes of this motion.

Jell-E-Bath is an Oregon corporation that sells home spa treatments and other products under the "JELLYBATH" trademark. Answer to Am. Compl. ("Answer") ¶¶ 2, 8 (Dkt. No. 21). Jell-E-Bath filed an application to register the JELLYBATH trademark with the United States Patent and Trademark Office ("USPTO") on September 9, 2004, and owns the use of the mark for "bath soaks, bath beads, body salt scrubs, bath lotions, bath milks, bath oils, bath crystals, body oils, essential oils for inclusion in baths, eye compresses for cosmetic purposes, mineral bath salt treatments not for medicinal use and exfoliation bath soaks." Id. ¶ 9. Alicante is the president of Jell-E-Bath and an Oregon domiciliary. Id. ¶¶ 2, 9.

Gelicity is a United Kingdom corporation that sells bath products under the trademark "GELLI BAFF." Countercls. & Third Party Compl. ("Countercls.") ¶¶ 6, 17 (Dkt. No. 21). Gelicity filed an application to register the GELLI BAFF trademark with the United Kingdom Intellectual Property Office on December 15, 2006, and owns the use of the mark in the United Kingdom for "children bathtime plaything[s]." U.S. Trademark Application Serial No. 85178665 (filed Nov. 17, 2010) ("'665 App.").[1] On November 3, 2010, Jell-E-Bath informed Gelicity that it was considering legal action for "use of the confusingly similar Gelli Baff" mark on any "goods manufactured and/or distributed in the United States." Answer ¶ 20.

---

[1] "The Court may properly take judicial notice of official records of the United States Patent and Trademark Office." Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 301 n.6 (S.D.N.Y. 2012) (quotation omitted).

On November 17, 2010, Gelicity filed an application to register the trademark GELLI BAFF with the USPTO based on its United Kingdom registration; the application stated that the mark was "first used in commerce at least as early as 00/00/2007, and is now in use in such commerce." '665 App. Gelicity then initiated this action for a declaratory judgment of trademark non-infringement on December 8, 2010. Dkt. No. 1. Defendants struck back on January 18, 2011 with counterclaims and third party claims against Walton and Morris, who are principals of Gelicity and United Kingdom domiciliaries. Dkt. No. 3.[2] Shortly thereafter, on January 25, 2011, Gelicity amended its U.S. trademark application to exclude references to use in commerce, and instead claimed "a bona fide intention to use . . . the mark in commerce." '665 App. That application is currently pending and is suspended pending a final determination in this action. Jell-E-Bath, Inc. v. Gelicity (UK) Ltd., No. 91201239 (T.T.A.B. Dec. 21, 2012).

Gelicity amended the Complaint on April 27, 2011, prompting counterclaimants to file amended counterclaims and third party claims on May 10, 2011. Dkt. Nos. 20-21. The gravamen of the counterclaims and third party claims is that GELLI BAFF is confusingly similar to JELLYBATH, so Gelicity defendants are harming counterclaimants' reputation and goodwill through their sales and advertising. Countercls. ¶¶ 21-23, 31-35, 39-47. Gelicity defendants answered these claims on May 31, 2011. Dkt. No. 22.

---

[2] It is unclear what a dispute between United Kingdom and Oregon domiciliaries is doing in the Eastern District of New York. Gelicity claims that "Alicante conducts significant business in the nature of licensing from within this judicial district," Am. Compl. ¶ 4 (Dkt. No. 20), although the most likely explanation is that Gelicity's counsel is based in Brooklyn. In any event, the parties have waived any personal jurisdiction or venue defenses. Azrelyant v. B. Manischewitz Co., No. 98-CV-2502, 2000 WL 264345, at *5 (E.D.N.Y. Jan. 13, 2000) (citing Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979)).

On May 17, 2013, Gelicity defendants moved to dismiss the counterclaims and third party claims, arguing that counterclaimants had not sufficiently pleaded claims for trademark infringement or unfair competition, or established individual liability against the third party defendants.  Gelicity Defs.' Mem. (Dkt. No. 86).  Counterclaimants filed their opposition on June 3, 2013, and Gelicity defendants filed their reply on June 10, 2013.  Countercls.' Opp'n (Dkt. No. 92); Gelicity Defs.' Reply (Dkt. No. 95).

## DISCUSSION

### I.   Legal Standards

Rule 12(b) requires that a motion to dismiss "be made before pleading if a responsive pleading is allowed."  Gelicity defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure after answering the counterclaims and third party claims.  Nonetheless, a "Rule 12(b)(6) motion[] made after the close of the pleadings 'should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c).'"  Brojer v. George, No. 11-CV-3156, 2013 WL 1833246, at *2 (E.D.N.Y. May 1, 2013) (quoting Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001)).

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "In deciding a motion under [Rule] 12(c), the Court applies the same standard as that applicable to a motion under [Rule] 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party."  Reyes v. City of New York, No. 10-cv-1838, 2012 WL 37544, at *2 (E.D.N.Y. Jan. 9, 2012) (citing Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004)).

4

To survive a motion to dismiss pursuant to Rule 12(b)(6), the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation"; mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" will not suffice. Id. (internal quotations and citations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a pleading states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

## II. Trademark Infringement

The Lanham Act prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" "without the consent of the registrant." 15 U.S.C. § 1114(a).

"[T]he elements of a trademark infringement claim under the Lanham Act are: (1) that the plaintiff holds a valid mark entitled to protection; (2) that the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services (5) without plaintiff's consent; and (6) that the defendant's use of a similar mark is likely to cause confusion." Japan Press Serv., Inc. v. Japan Press Serv., Inc., No. 11 CV 5875, 2013 WL 80181, at *12 (E.D.N.Y. Jan. 2, 2013) (citing 1-800 Contacts, Inc. v.

5

WhenU.Com, Inc., 414 F.3d 400, 406-07 (2005)).  "[D]emonstrating use in commerce is a threshold burden" because "'no [] activity is actionable under the Lanham Act absent the 'use' of a trademark.'"  Kelly-Brown v. Winfrey, --- F.3d ----, 2013 WL 2360999, at *7 (2d Cir. May 31, 2013) (quoting 1-800 Contacts, 414 F.3d at 412).

### A. Use in Commerce

"The history and text of the Lanham Act show that 'use in commerce' reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause." Buti v. Perosa, S.R.L., 139 F.3d 98, 102 (2d Cir. 1998) (quotation omitted).  A mark is deemed to be in use in commerce when (1) "it is placed in any manner on the goods or their containers," and (2) "the goods are sold or transported in commerce."  15 U.S.C. § 1127.  However, "[b]ecause territoriality is the bedrock principle of trademark law, . . . 'use in commerce' in the Lanham Act [] contemplate[s] use that, at some point in the transaction, implicates the United States."  ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 164 n.26 (2d Cir. 2007).

Counterclaimants fail to sufficiently allege use in commerce.  They merely claim that Gelicity defendants "used in commerce infringements of [Jell-E-Bath's] registered trademark," with no indication that Gelicity defendants—who are United Kingdom domiciliaries—sold, transported, or advertised goods with the allegedly infringing mark in the United States.  Countercls. ¶ 21.  Although Gelicity represented to the USPTO that it used the GELLI BAFF mark in commerce since 2007, it amended its filings to remove this representation before the USPTO took any action or the currently operative Counterclaims and Third Party Complaint were filed.  Countercls.' Opp'n at 6-8; Gelicity Defs.' Reply at 4 n.3; '665 App.  Since the USPTO did not adopt Gelicity's prior position and counterclaimants have suffered no prejudice, Gelicity defendants are not estopped

6

from denying use in commerce. See DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010).[3] Counterclaimants' reliance on a picture of a box marked GELLI BAFF is similarly unavailing since there is no indication that the box was sold in the United States. Countercls.' Opp'n at 7; '665 App. In sum, counterclaimants offer "a formulaic recitation of the elements of a cause of action [that] will not do." Iqbal, 556 U.S. at 678 (quotation omitted).

### B. Extraterritorial Application of the Lanham Act

Although counterclaimants do not sufficiently allege use in commerce within the United States, "[t]he Lanham Act may reach allegedly infringing conduct that occurs outside the United States when necessary to prevent harm to commerce in the United States." Atl. Richfield Co. v. ARCO Globus Int'l Co., 150 F.3d 189, 192 (2d Cir. 1998) (citing Steele v. Bulova Watch Co., 344 U.S. 280, 285-86 (1952)). The Second Circuit has set forth three factors for courts to balance when deciding whether to apply the Lanham Act extraterritorially: (1) "whether the defendant is a United States citizen"; (2) "whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law"; and (3) "whether the defendant's conduct has a substantial effect on United States commerce." Id. (citing Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 642 (2d Cir. 1956)). "'The absence of one of the above factors might well be determinative,' and the absence of two 'is

---

[3] "Judicial estoppel applies to sworn statements made to administrative agencies" if "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the [agency] in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." Id. (citing New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)).

7

certainly fatal.'" Juicy Couture, Inc. v. Bella Int'l Ltd., --- F. Supp. 2d ----, 2013 WL 978773, at *10 (S.D.N.Y. Mar. 12, 2013) (quoting Vanity Fair, 234 F.2d at 643).

Balancing the Vanity Fair factors weighs against extraterritorial application. First, it is undisputed that all Gelicity defendants are United Kingdom domiciliaries. Second, because Gelicity has registered its trademark in the United Kingdom, extraterritorial application of the Lanham Act raises "questions about foreign trademark law . . . sufficient to increase this Court's caution in exercising jurisdiction over matters more appropriately left to foreign courts." Id. at *12 (quotation omitted). Since the absence of two Vanity Fair factors is "fatal," the Court need not reach the third. See Vanity Fair, 234 F.2d at 643 ("[T]he Lanham Act . . . should not be given an extraterritorial application against foreign citizens acting under presumably valid trademarks in a foreign country.").

To summarize, counterclaimants cannot demonstrate that Gelicity defendants used the allegedly infringing mark in commerce or that the Lanham Act should apply extraterritorially. Accordingly, counterclaimants' trademark infringement claims are dismissed.

### III. State Law Claims

Counterclaimants bring claims for common law trademark infringement and unfair competition under New York law.

#### A. Constitutional Constraints on Choice of Law

"A court may apply the law of any state . . . provided that state has a sufficient interest in the dispute such that application of its law does not offend the Due Process Clause or Faull Faith and Credit Clause of the United States Constitution." Diehl v. Ogorewac, 836 F. Supp. 88, 91-92 (E.D.N.Y. 1993) (citing Allstate Ins. Co. v. Hague, 449

8

U.S. 302, 320 (1981) (Stevens, J., concurring)). The Court cannot constitutionally apply substantive New York law to a dispute between Oregon and United Kingdom domiciliaries where no "significant contacts or a significant aggregation of contacts" with New York are alleged. Id. at 92 (quoting Allstate, 449 U.S. at 313 (majority opinion)). Therefore, the Court may only constitutionally apply the substantive law of Oregon or the United Kingdom to these claims.

### B. Choice of Law Analysis

"A federal court . . . adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157 (2d Cir. 2012) (quotation omitted). Under New York choice of law rules, if there is "an actual conflict between the laws of the jurisdictions involved," then "the law of the jurisdiction having the greatest interest in the litigation will be applied. Interest analysis is a flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Id. at 157-58 (quotations omitted). In tort law disputes where conduct-regulating laws are at issue, as opposed to loss-allocating rules, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Id. at 158 (quotations omitted).

Assuming that there is an actual conflict between Oregon and United Kingdom law, Oregon has the greater interest in this litigation. Since this lawsuit deals primarily with a federally registered trademark, any conduct regulated by state law must have occurred within the United States. Moreover, any alleged harms to counterclaimants'

9

"goodwill and reputation" must have occurred in Oregon, where they are domiciled, and not the United Kingdom, where they do not claim to do business. Countercls. ¶¶ 35, 40. Accordingly, Oregon law governs counterclaimants' common law claims.

### C. Common Law Claims

Under Oregon law, "[c]laims for common law trademark infringement are analyzed using the same framework under the Lanham Act." L & A Designs v. Xtreme ATVs, Inc., No. 03:10-CV-627, 2012 WL 1532417, at *5 (D. Or. Apr. 30, 2012) (citing Classic Instruments v. Vdo-Argo Instruments, 700 P.2d 677, 684 (Or. Ct. App. 1985)). Similarly, "[i]n unfair competition claims, a court 'is guided by the same principles that are applied in the protection of individuals in the use of trademarks and trade names.'" Id. (quoting Umpqua Broccoli Exchange v. Um-Qua Valley Broccoli Growers, 245 P. 324, 327 (Or. 1926)). Since counterclaimants have not shown that Gelicity defendants' used the allegedly infringing mark in commerce within the United States, counterclaimants' common law trademark and unfair competition claims are dismissed.

### IV. Leave to Amend

Counterclaimants request leave to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure if the Court dismisses any of its claims. Countercls.' Opp'n at 13. Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "A party that has failed to state a claim should generally be afforded an opportunity to amend its complaint or counterclaim, but leave to amend need not be granted if an amended complaint or counterclaim would also fail to state a claim." Gortat v. Capala Bros., Inc., 585 F. Supp. 372, 377 (E.D.N.Y. 2008).

Counterclaimants' proposed additional allegations cure the deficiencies in the Counterclaims and Third Party Complaint. For example, counterclaimants intend to

10

allege that "Gelicity or its distributors displayed and sold Gelli Baff at the Dallas World Trade Center at a trade show on or about June 2010." Countercls.' Opp'n at 14. Advertising and promoting goods with an allegedly infringing mark, even if Gelicity defendants did not ship the goods themselves, sufficiently alleges use in commerce. Peek & Cloppenburg KG v. Revue, LLC, No. 11 Civ. 5967, 2012 WL 4470556, at *4 (S.D.N.Y. Sept. 19, 2012). Similarly, counterclaimants propose alleging that "Paul Morris and Wayne Walton negotiated the agreement with PlaSmart, Inc. to distribute Gelli Baff in the United States." Countercls.' Opp'n at 14. "Employees who direct, control, ratify, participate in, or are the moving force behind a Lanham Act violation can be held personally liable for those violations." Merck Eprova AG v. Brookstone Pharm., LLC, --- F. Supp. 2d ----, 2013 WL 363382, at *17-18 (S.D.N.Y. Jan. 31, 2013) (citing cases). Therefore, counterclaimants' motion to amend is granted.

## CONCLUSION

For all of the foregoing reasons, Gelicity defendants' motion is converted to one brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and is hereby GRANTED with leave for counterclaimants to amend their pleadings.

SO ORDERED.

Dated: Brooklyn, New York
July 1, 2013

                                              /s/ ILG
                                       I. Leo Glasser
                                       Senior United States District Judge